Brilhart Unemployment Compensation Case.

Argued October 1, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*David R. Perry*, Special Deputy Attorney General, with him *James H. Duff*, Attorney General, for appellant.

*Roland M. Morgan*, with him *Charles R. Davis*, Special Deputy Attorney General, *James H. Duff*, Attorney General, and *R. Carlyle Fee*, Assistant Special Deputy Attorney General, for appellee.

OPINION BY RENO, J., October 30, 1946:

From May 1945 to August 14, 1945, claimant in this unemployment compensation proceeding was employed as a spot welder in a munitions plant. On the latter date she was laid off because of the termination of war work. She applied for benefits, registered for work, and on August 30, 1945, was referred to two prospective employers. The wages offered were the prevailing wage in the area but considerably less than she had been receiving. She rejected both referrals without interviewing the referred employers, and the bureau denied her claim. Her appeal to the referee resulted in the affirmance of the bureau's determination. She appealed to the board, and assigned as the reason for her appeal: "Work was not suitable. Girls getting their money. I think I'm entitled to mine to [sic]. I was not fired or layed off. The plant shut down." The board held that claimant had not had "a reasonable opportunity to obtain wages reasonably commensurate to those previously earned," and reversed the referee.

The board's decision is based upon its policy of affording employes a reasonable opportunity during the reconversion period of securing employment at wages comparable to their previous earnings. We reviewed this policy and sanctioned it in *Fuller Unemployment Compensation Case,* 159 Pa. Superior Ct. 74, 46 A. 2d 510, and we adhere to our approval.

The policy must not be applied promiscuously, and without regard to the evidence of the individual case. The policy stems from, is an interpretation of, and is supported only by the "good cause" phrase of §402(a), of the Unemployment Compensation Law, 43 PS §802,[1]

---

[1] "An employe shall be ineligible for compensation for any week— (a) In which his unemployment is due to failure, *without good cause,* either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment office or by any employer: Provided, That such employer simultaneously notifies the employment office of such offer." (Italics supplied).

and it operates only when other factors comprising good cause are also present. The vitalizing element of good cause is good faith. *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898. There can be no good cause which does not rest in good faith.

Good faith, in this context, embraces not only the merely negative virtue of freedom from fraud but also positive conduct which is consistent with a genuine desire to work and to be self-supporting. Good faith never resides in a claimant who is seeking to take advantage of his benefit rights in order to have a compensated vacation from work. Cf. 55 Yale L. J. 150.

In the *Fuller* case, supra, p. 75, the claimant was looking for work, and "expected to be called back to her former employer within two weeks." In *Davis Unemployment Compensation Case,* 159 Pa. Superior Ct. 77, 46 A. 2d 512, the facts are not reported in the opinion, but the record shows that the claimant refused one referral because the wages were insufficient, but accepted two others and actually interviewed the prospective employers who however did not engage her services. With the showing in those cases of the claimants' honest purpose to seek employment, with the element of good faith fairly established, we approved and applied the board's over-all reconversion unemployment policy. But the doctrine of the *Fuller* case must be confined to cases revealing similar facts, and the policy will justify a refusal of work for a good cause only where good faith has been satisfactorily proven.

The attitude of this claimant, disclosed by her actions and the grounds of her appeal, lacks the essential ingredient of good faith. Her refusal of referrals without interviewing the employers and her written statement that she wanted the benefits which other girls were getting, indicate an application for a vacation rather than for work. By registering for work claimant raised a presumption of her availability, but it was weakened by her refusal of referrals, and shaken by her failure to

interview prospective employers. *Sturdevant Unemployment Compensation Case,* supra, p. 560. Her bland assertion of a *right* to benefit because others were receiving them, regardless of whether the others were receiving them deservedly or otherwise, advances an inadmissible predicate for compensation, and denotes, to state it most mildly, a trifling approach to her own problem of unemployment.

This case vividly illustrates the inherent peril in over-simplified and indiscriminate application of a general policy or principle to a particular case. In the *Fuller* case, we said that §4(t) of the Unemployment Compensation Law, 43 PS §753, imposed upon the unemployment compensation authorities the duty to study economic conditions prevailing at the time work is offered, and to adjudicate claims in the light of that situation. But the same section also enumerates *personal* qualifications—"the length of time *he* has been unemployed . . . the prospect of obtaining local work in *his* customary occupation, *his* previous earnings," etc., (Italics supplied), and the results of economic studies must be related to an *individual* whose claim satisfies the requirements of the statute. The law provides benefits for covered employes who are unemployed through no fault of their own, but not for all members of that class of workers, only for those who are selected, one by one, out of that class, and found to possess the necessary qualifications for compensation according to the legislative formula.

Discerning administrators of unemployment compensation have already discovered that unless claims are critically examined and unconscionable requisitions upon the fund firmly rejected public opinion will not support the law. Yale L. J., supra.

Decision reversed.