Michalsky Unemployment Compensation Case.

Argued September 29, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

W. J. Krencewicz, for appellant.

Richard H. Wagner, with him William L. Hammond, Special Deputy Attorney General, and T. McKeen Chidsey, Attorney General, for appellee.

E. Mac Troutman and Penrose Hertzler, for intervenor, appellee.

OPINION BY HIRT, J., November 10, 1948:

Claimant, the appellant here, had been employed by Philadelphia and Reading Coal and Iron Company as a miner in the Maple Hill Colliery for many years. December 7, 1946, was his last working day. On that date his person was attached and he was committed to Schuylkill County Jail because he then was $55 in arrears in his payment on a court order under which he was obliged to pay $70 monthly for the support of his wife and six of his nine children who were under sixteen years of age. His regular average earnings were then, and for some time had been almost $53 per week. Claimant remained in jail until June 2, 1947, when he contacted his attorney and was released. He then was able to work and he immediately reported at Maple Hill Colliery for reëmployment. During the whole of the six-months period of claimant's incarceration, Philadelphia and Reading Coal and Iron Company, his employer, had no knowledge of his whereabouts, with the result that in the interval he had been replaced by another employe and no work was available for him at the colliery upon his release from jail. He thereupon filed claim for un-

employment compensation benefits. These were denied by the bureau on a finding that "claimant was responsible for his idleness" and was ineligible for benefits within the meaning of §402(b) of the Unemployment Compensation Law, the Act of December 5, 1936, Second Ex. Sess. P. L. [1937] 2897, as amended, 43 PS §802. The decision of the bureau was affirmed by the referee on a like finding that claimant had voluntarily left his employment without good cause. On further appeal the board of review affirmed the findings and decision of the referee. In the course of its opinion the board held: "An essential element of the employment relationship is the regular attendance by the employe in order that the employer's business be not disrupted. Where an individual is unable to report for work, it is incumbent upon him in order to maintain the employment relationship to make a reasonable effort to notify his employer when he is compelled to be absent and to give some indication of when he expects to be able to return." The board in effect also found that claimant did not make a "sufficient effort to communicate with his employer" during his six-months term in jail, and concluded: "The claimant by his voluntary act in having failed to communicate with the employer during his extended absence voluntarily left his work within the meaning of Section 402(b) and is disqualified thereunder."

Section 3, Article 1, of the Unemployment Compensation Law, 43 PS §752, is a declaration of public policy as to the purposes and aims of the legislature in establishing our system of unemployment compensation. It specifically recites that the setting aside of unemployment reserves are made compulsory under the police power "for the benefit of persons unemployed through no fault of their own". The public policy so declared must be considered in construing every provision of the Act and in determining eligibility for compensation in every case. *Barclay White Co. v. Unemp. Comp. Bd.,*

356 Pa. 43, 50 A. 2d 336. In *Dept. L. & I. etc. v. Unemplmnt. Comp. Bd.,* 148 Pa. Superior Ct. 246, 24 A. 2d 667, we emphasized a limitation on the right to the benefits intended by the Act, thus: ". . . the basic principle at the root of the Act, justifying the exercise of the police powers of the Commonwealth in its enactment, is that the reserves thus set aside from the enforced contributions of employers are to be used for the benefit of persons *unemployed through no fault of their own.*"

In the present case therefore if claimant's unemployment resulted from his own fault he is not eligible for compensation. One who voluntarily leaves his work (*Mandel v. Unemply. Comp. Board,* 141 Pa. Superior Ct. 580, 15 A. 2d 479) or unreasonably refuses proper employment (*Brilhart Unemploy. Compensation Case,* 159 Pa. Superior Ct. 567, 49 A. 2d 260) or has become unemployed by reason of his conviction and imprisonment for crime ( *Dept. L. & I. etc. v. Unemplmnt. Comp. Bd.,* supra) is ineligible for unemployment benefits. The present appeal differs from the above cases only on its facts; essentially it is of the same character and falls within the class of cases where ineligibility for compensation is chargeable to the claimant's fault.

While the claimant here did not formally quit his employment, he must have known that his job would not be kept open for him if he stayed away from his work indefinitely. He deliberately prolonged his term in jail as a "sit-down strike" against his wife and in defiance of the court which had committed him for contempt in failing to comply with its order. The fact that claimant's self-imposed six-months sentence was not directed against his employer does not alter the fact that he is responsible for the situation which compelled his replacement by another productive worker in the mine. If this delinquent husband at any time had indicated a sincere intention of making good his arrears on the sup-

port order, he undoubtedly would have been released from jail to return to his employment. However, in any view, though he had no resources other than his earnings, he could have secured the payment of his arrearage at anytime after he was served with the attachment. He owed $55 on the support order but he had a credit with his employer for two weeks wages earned in an amount more than sufficient to discharge the arrearage. This comment from *Dawkins Unemp. Compensation Case*, 358 Pa. 224, 238, 56 A. 2d 254, therefore is pertinent: "If every reason which appeals to an employe's head or his heart is to be accepted as a 'good cause' for his or her voluntarily leaving a job in a locality where there is no other work available, the Unemployment Compensation Law will become in many instances an invitation to a compensated rest." Claimant was maintained by the county during his six-months sojourn in jail and he is attempting further to extend his "compensated rest" period in this appeal at the expense of the Unemployment Compensation fund. We are in agreement with the bureau, the referee and with the board that claimant is ineligible for benefits within the meaning of §402(b) of the Act. 43 PS §802.

Claimant tacitly admits that his unemployment was voluntary during the whole of the six-months period of his confinement in jail. He did not file a claim for benefits until *after* his release and the first compensable week for which he claimed compensation ended on June 29, 1947. We agree with the conclusion of the board, but we differ as to the significance which the board attached to claimant's failure while in jail to give notice to his employer as to his whereabouts. The solution of cases of this class is not so simple and they cannot be decided in all instances by the application of a convenient rule. A timely notice to an employer by an employe of his whereabouts and his reason for his absence from his employment in some cases will preserve his right to

benefits. In others, the employer-employe relationship cannot be preserved by such notice alone. Each case must be viewed in the light of its circumstances and on its own facts. Here, to have given such notice without making any effort to get out of jail would not have improved claimant's position. He had the key to his own release from confinement and, as we have indicated, he wilfully refused to use it. The legal effect of his voluntary unemployment for the period of six months under the circumstances of this case, amounts to an abandonment of his employment and a termination of the relationship of employer and employe. Claimant is not entitled to benefits.

Order affirmed.