## Vernon Unemployment Compensation Case.

Argued November 10, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Eugene Charles Sloan,* for appellant.

*Richard H. Wagner,* with him *William L. Hammond,* Special Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for appellee.

OPINION BY DITHRICH, J., January 14, 1949:

This case raises the question of whether or not an employe who admittedly has good cause for leaving his employment can remain away from it for an indefinite period, after the good cause for his leaving has ceased to exist, and still be entitled to unemployment compensation benefits. The Unemployment Compensation Board of Review answered the question in the negative. Its decision must be affirmed.

The claimant had been employed as a construction laborer by the Pittsburgh Steel Company at Allenport, Pa., from July 20, 1944, to March 4, 1947. The material facts are clearly and succinctly set forth in the Board's second finding, substituted for the referee's Finding of Fact No. 2 which it vacated: "2. On March 4, 1947, the claimant was assaulted by a co-worker and received serious injuries requiring hospitalization for eight days and medical care until May 14, 1947. On May 14, 1947, claimant was released by his physician to perform light work. However, claimant did not return to work upon release by his physician, but remained at home to supervise the replacement of a roof on his house. He gave due notice to the employer of such intention. In the latter part of

August he reported to the employer company but, being unable to see the individual he was calling upon, left without attempting to ascertain his status. He again called on October 8, 1947, but could not see the individual he was seeking. He called again on October 22, 1947, at which time he was advised that there was no work for him."

The reason there was no work for him was that his place had been filled by an employe who had greater seniority rights.

The Board's conclusion of law was that claimant, in failing to communicate with his employer from May 14 to the latter part of August, 1947, had voluntarily quit work without good cause, and therefore was disqualified under § 402 (b) of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, 43 PS § 802, as amended, which provides, in part: "An employe shall be ineligible for compensation for any week . . . (b) In which his unemployment is due to voluntarily leaving work without good cause: . . ." The Board said: "In the first instance, although he gave notice of his intention to remain at home to supervise the replacement of the roof on his house, there is no . . . satisfactory explanation of the unusual period of time which elapsed between his recovery and the first call upon the employer in the last part of August. Furthermore, there is no explanation for his failure to ascertain his status in August or when he subsequently called on October 8th, or why he waited from August to October 8th and from October 8th to October 22, 1947, to make return calls. Under such circumstances, we think his action with reference to his employment was so generally careless and desultory as to lead directly to termination. Furthermore, regardless of his actual intention, his reckless disregard for the continuance of his employment gives rise to a clear inference that he intended to terminate his employment.

". . . His previous attitude toward returning to work was clearly inconsistent with a genuine desire to work and be self-supporting and evinced an obvious lack of good faith."

The "lack of good faith" conclusion by the Board was based on our opinion in the *Brilhart Unemployment Compensation Case*, 159 Pa. Superior Ct. 567, 49 A. 2d 260, where we said, page 569: "The vitalizing element of good cause is good faith. Sturdevant Unemployment Compensation Case, 158 Pa. Superior Ct. 548, 45 A. 2d 898. There can be no good cause which does not rest in good faith.

*"Good faith, in this context, embraces not only the merely negative virtue of freedom from fraud but also positive conduct which is consistent with a genuine desire to work and to be self-supporting.* Good faith never resides in a claimant who is seeking to take advantage of his benefit rights in order to have a compensated vacation from work. Cf. 55 Yale L. J. 150." (Emphasis added.)

Assuming that the employer agreed to his absence while roof repairs were being made, claimant's temporary absence from work would seem to be for good cause, according to the generally accepted definition of that term; in any view; if the assumption be correct, the employer would not be in a position to contest the point, having acceded to the absence. The question then presented is whether or not voluntary absence from work for good cause becomes, through the lapse of an unreasonably long period of time, a voluntary termination of the employer-employe relationship without good cause, so as to preclude recovery under § 402 (b). Most of the cases decided under this section of the Act have required an appraisal of particular acts of an employe and a decision as to whether or not those acts amounted to a voluntary leaving of work without good cause. This case differs in that it calls for a consideration of the employe's failure to act over a period of time and a determination of whether or not his inaction resulted in a forfeiture

of the right to compensation. In other words, when claimant was replaced by another employe, according to seniority rights, on the assumption that he had quit his job, was it a reasonable assumption. It seems entirely reasonable to hold that a claimant who neglects to take those precautions to guard his job, which a reasonably prudent person would take, and who is not permitted to return to his work in consequence thereof, in effect leaves his employment voluntarily. Since claimant's unemployment was caused by his failure to take reasonable measures to preserve his relations with his employer, he should be disqualified from receiving benefits under the section of the Unemployment Compensation Law in question.

It is futile for the employe to argue that his lack of seniority rights was the cause of his losing his job. That was due solely to a voluntary quit on his part. Seniority was the reason he was not re-employed after he had quit his job. Had he resumed work when he was able to do so, or at least communicated to his employer his intention to return to work, there is nothing in the record to indicate that he would have lost his employment because of lack of seniority, or, to put it in another way, because of greater seniority rights on the part of the employe who replaced him.

An affirmance of the Board's decision in this case does no more than cast upon employes who have, either for a good cause or with the consent of the employer, ceased work temporarily, the burden of keeping alive the employer-employe relationship after the expiration of a reasonable time for the temporary absence.

The case is closely analogous to the *Michalsky Unemployment Compensation Case*, 163 Pa. Superior Ct. 436, 62 A. 2d 113. There, the claimant was committed to jail for failure to pay arrearages due under a

court order for the support of his wife and children, and remained in prison for six months without giving notice to his employer during the entire period of his incarceration. In the interval he had been replaced by another employe and no work was available for him upon his release from jail. We held that he had voluntarily quit work without good cause. It differs from the instant case, however, in that from the very beginning Michalsky's absence could be considered as a voluntary leaving without good cause, since at the time of his arrest and commitment he had as a credit with his employer funds sufficient to satisfy the arrearages. But the determinative factor which makes it definitely analogous to this case was the failure of claimant to keep his employer informed as to the reason for his absence from work. We said, pages 439-440: "While the claimant here did not formally quit his employment, he must have known that his job would not be kept open for him if he stayed away from his work indefinitely. . . . This comment from Dawkins Unemp. Compensation Case, 358 Pa. 224, 238, 56 A. 2d 254, therefore is pertinent: 'If every reason which appeals to an employe's head or his heart is to be accepted as a "good cause" for his or her voluntarily leaving a job . . . the Unemployment Compensation Law will become in many instances an invitation to a compensated rest.' . . .

"... We agree with the conclusion of the board, but we differ as to the significance which the board attached to claimant's failure . . . to give notice to his employer as to his whereabouts. The solution of cases of this class is not so simple and they cannot be decided in all instances by the application of a convenient rule. A timely notice to an employer by an employe of his whereabouts and his reason for his absence from his employment in some cases will preserve his right to benefits. In others, the employer-employe relationship cannot be preserved by such notice alone. Each case must be viewed in the light of its circumstances and on its own facts."

The significance of the *Michalsky* case and its impact on the instant case is that an employe cannot assume that his employment status will continue indefinitely without his keeping his employer informed as to his availability during a protracted period of absence from work. The question is not whether claimant had good cause for not returning to work on May 14, 1947, but whether his good cause had ceased to exist by the time he contacted his employer and communicated his desire to return to work. We agree with the Board that from May 14 to the latter part of August was an "unusual period of time" to be employed "in supervising" repairs of the type required to the roof of his house, and that there is no reasonable explanation why he could not have ascertained his employment status prior to October 22, 1947. He was exceedingly dilatory to say the least.

Decision affirmed.