## Flannick Unemployment Compensation Case.

Argued March 21, 1951. Before RHODES, P. J., HIRT, RENO, ROSS, ARNOLD and GUNTHER, JJ. (DITHRICH, J., absent).

*Madlyn Flannick,* appellant, in propria persona, submitted a brief.

*William L. Hammond,* Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, and *Bruce E. Cooper,* Associate Counsel for appellee.

OPINION BY RENO, J., July 19, 1951:

The Board found: "1. Claimant [appellant] was last employed by the Ernest Ince Beauty Salon, . . . Philadelphia, Pa., from August, 1949, until December 31, 1949. 2. Claimant voluntarily left her employment on December 31, 1949, because of pregnancy. She did not request a leave of absence nor did she return to her former employer in an effort to be reinstated when she was again available for work, after the birth of her baby on April 24, 1950." She registered for work on May 26, 1950. The findings are supported by the evidence and are binding upon us. Unemployment Compensation Law, §510, 43 P. S. §830. Compensation was denied under §402, 43 P. S. §802, which provides: "An employe shall be ineligible for compensation for any week— . . . (b) In which his unemployment is due to voluntarily leaving work without good cause."

This appeal requires us to consider for the first time the problem and the status of a pregnant employe under the unemployment compensation statute.

It cannot be asserted, dogmatically and without reservation, that a pregnant woman who leaves her employment does so voluntarily and without good cause. A "good cause" may be personal to the employe and need not be directly connected with the employment, *Teicher Unemployment Compensation Case,* 154 Pa. Superior Ct. 250, 35 A. 2d 739, and where an employe is compelled to leave employment by necessitous circumstances the leaving is voluntary but with good cause. *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior. Ct. 548, 45 A. 2d 898. Pregnancy is, of course, a physical condition which compels relinquishment or, at least, suspension of employment.

However, the condition which requires a prospective mother to cease work also prevents her from accepting other suitable work, and for a period she is ineligible for unemployment compensation. Law, §401(d), 43 P. S. §801. There may be instances where a pregnant woman is "able to work and available for work" in a lighter or different occupation, less difficult or less detrimental to her health, for a period before her confinement, but the market for such service must, in the nature of things, be narrowly restricted. Subject to rare and exceptional cases, it may be said generally that a physical condition which justifies leaving employment will also prevent the employe from working, and consequently disqualify her from receiving benefits. *D'Yantone Unemployment Compensation Case,* 159 Pa. Superior Ct. 15, 46 A. 2d 525.

In a realistic approach to the problem here involved, pregnancy must be treated as a temporary disability, the continuance of which varies with different individuals. Moreover, the birth of a child produces different results in various families. In some instances

the mother returns to work after the confinement. In others the presence of a child in the household requires the mother's constant attention, and she permanently withdraws from the so-called labor force. In some cases a mother may be so situated (e.g., where she is living with *her* mother) that she can resume her former work without appreciable diminution of her energy or hours of labor. In other cases the mother will be obliged to divide her time between her child and her employment, compelling her to seek and accept only part-time employment, thereby reducing her availability for work, and perhaps rendering her available only for work for which there is no demand in the labor market. And in all cases the health of the mother after the birth of the child is a potent factor.

These are some aspects of the problem. The immediate question is whether, under the facts, the Board was warranted in withholding benefits from appellant. In a number of states the eligibility of pregnant women is regulated by statute. In the absence of a specific provision in our Pennsylvania legislation, the Board has adopted and, according to the brief of its able counsel, consistently followed and applied a rule which denies benefits to pregnant women who do not apply for a leave of absence before leaving their employment or offer to return to it within a reasonable time after confinement. In short, failure to apply for a leave of absence, whether allowed or not, or omission to report to her employer for further work after the confinement, is deemed a termination of the employer-employe relation and a permanent withdrawal from the labor force.

We cannot say that the rule is unreasonable or without substantial relevancy to the problem. Some expressions by this Court lend support to the rule. For instance, in *Vernon Unemployment Compensation Case,* 164 Pa. Superior Ct. 131, 135, 63 A. 2d 383, which

involved §402(b) and the continuance of the employer-employe relationship, Judge DITHRICH said: "It seems entirely reasonable to hold that a claimant who neglects to take those precautions to guard his job, which a reasonably prudent person would take, and who is not permitted to return to his work in consequence thereof, in effect leaves his employment voluntarily." Likewise, in *Michalsky Unemployment Compensation Case,* 163 Pa. Superior Ct. 436, 440, 62 A. 2d 113, dealing with the same principle and section in another factual frame, Judge HIRT, said: "A timely notice to an employer by an employe of his whereabouts and his reason for his absence from his employment in some cases will preserve his right to benefits. In others, the employer-employe relationship cannot be preserved by such notice alone. Each case must be viewed in the light of its circumstances and on its own facts." The gist of these cases is, and accordingly we hold, that where an employe leaves employment because of a temporary disability with the expectation of later returning to work he is required to apply for a leave of absence, give a timely notice, or otherwise manifest an intention not to abandon the labor force. This is especially applicable where the leaving is an equivocal act, as where a pregnant woman leaves her employment and the leaving can be construed either as a temporary absence or an abandonment of the labor force.

Repeating the statement in the *Michalsky* case, supra: "Each case must be viewed in the light of its circumstances and on its own facts." In this appeal there can be little doubt of the correctness of the Board's decision. When appellant applied for work she stated as the cause of her unemployment: "Laid off, Lack of Work." At the referee's hearing she frankly admitted that she left her work because of her physical condition. These contradictory statements alone indicate lack of good faith, the essential element of good cause.

*Brilhart Unemployment Compensation Case,* 159 Pa. Superior Ct. 567, 49 A. 2d 260. In the brief written and submitted to this Court by appellant she says: "As for the 'Laid off, Lack of Work,' I'll let the appellee account for that. The only guilt I have in that connection is like an innocent man accused of crime and keeps his mouth shut." Naturally such an attitude fortifies the conviction that appellant was not animated by good faith.

Decision affirmed.