## Hall Unemployment Compensation Case.

Argued March 25, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*George Thomas Jackson,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Robert E. Woodside,* Attorney Gen-

eral and *Roland M. Morgan,* Associate Counsel, for appellee.

OPINION BY ROSS, J., July 17, 1952:

This is an unemployment compensation case in which the claimant, Elzena Hall, has appealed from the disallowance of her claim for benefits by the compensation authorities, who based their decision on the ground that the claimant left her last employment without good cause within the meaning of section 402 of the Pennsylvania Unemployment Compensation Law, 43 PS sec. 802, which provides: "An employe shall be ineligible for compensation for any week . . . (b) In which his unemployment is due to voluntarily leaving work without good cause . . ." The claimant was last employed by Bayuk Cigars, Inc., her last day of work being October 18, 1949. Thereafter, on January 9, 1950, she registered for work and filed an application for benefits.

The Board in disallowing benefits based its decision on the following findings of fact: "1. The claimant was last employed by Bayuk Cigars, Inc., 9th and Columbia Ave., Philadelphia, Penna., her last day of work being October 18th, 1949. 2. The claimant did not report for work subsequent to October 18th, 1949, nor did she contact her employer to explain the reason for her absence. On October 28th, 1949, a Betty Cole appeared at the employer's establishment and presented a note from the claimant in which the claimant requested that the pay due her be given to Miss Cole. The release of her pay check was approved. 3. The claimant made no further effort to contact the employer until December 16th, 1949, at which time she visited the employer's place of business in an effort to become re-employed. At that time she advised the employer that she had been ill and under the doctor's care; however, because of the claimant's prolonged absence the em-

ployer advised her that she had been replaced and that there was no work available at that time. 4. The claimant made no attempt to obtain a leave of absence nor did she, at any time during her absence, advise the employer that she was ill."

The initial question is, of course, whether the record discloses substantial, competent evidence to support the findings to the effect that claimant left her employment and remained away therefrom without explanation and without requesting a leave of absence. We are agreed that it does. Claimant testified: "I sent in a note that I was sick to Mr. Van [Mr. Van Erder, a supervisory employe of Bayuk Cigars] and asked him to send my pay and I was still ill, so the next week I sent in another note and asked him to send the rest of my pay. I told the girl to tell him I had the flu and when I got well I wanted to come back to work." She admitted that she did not ask for a leave of absence. She stated that her first note to the employer read: "Dear Mr. Van: I am sick. Will you please send me my pay?" She was asked whether she notified the employer of the reason for her absence, the nature of her illness and how long she expected to be away from work, and answered: "I told her [Betty Cole] to tell Mr. Van I was sick and tell him that I had Flu. When I stayed out for sickness I told her to tell him that the reason I was not back so soon was because I had a relapse." Claimant called Betty Cole, who testified that she "carried a note to Mr. Van" on a "Friday in October". She stated that she told Van Erder "Elzena Hall gave me the notice to give you, because she has flu and does not know when she will be able to come back." Miss Cole testified that she picked up claimant's pay a second time and on that occasion informed Van Erder that she didn't know when the claimant would return to work "because she was still sick in bed".

The employer's witness, Wanda Leonard, testified: "She [claimant] voluntarily left on October 18th. We did not hear from her until October 28th, at which time she sent in a note requesting her pay, reading as follows: 'Dear Sir: Please give my pay to Betty Cole.' " The witness stated that this note was the only communication from claimant. She stated: "No second note was received from the claimant in regard to her illness. . . . she didn't send in any information as to why she was out."

It is apparent that the compensation authorities determined that the credible evidence was that given by the employer's witness and since their findings are supported by real and substantial evidence we cannot interfere. "The credibility of witnesses, the weight of their testimony and the inferences to be drawn from it are for the Board. Devlin Unemployment Compensation Case, 165 Pa. Superior Ct. 153, 67 A. 2d 639. The findings [of the board] therefore are conclusive and are binding upon us. Section 510 of the Act, 43 PS §830; Tronieri Unemployment Compensation Case, 164 Pa. Superior Ct. 435, 65 A. 2d 426; D'Yantone Unemployment Compensation Case, 159 Pa. Superior Ct. 15, 46 A. 2d 525." *Taylor Unemployment Compensation Case*, 170 Pa. Superior Ct. 119, 121, 84 A. 2d 521.

Claimant testified that she was ill and under a doctor's care from October 18, 1949, her last day of work, until December 16, 1949, when she returned to seek reemployment. She presented a note from Dr. Winfree stating that claimant was under his care from October 10, 1949, until November 10, 1949, suffering from "pleurisy and LaGrippe". Assuming the truth of this testimony, the issue presented by this appeal is whether a claimant who leaves work and remains away therefrom because of illness is to be denied benefits under section 402(b) by reason of the fact that she failed to notify the employer of such illness and failed to re-

quest a leave of absence. We are agreed that the question must be answered in the affirmative, as it was by the compensation authorities.

Where an employe leaves employment because of a temporary disability with the expectation of later returning to work he is required to apply for a leave of absence, give a timely notice, or otherwise manifest an intention not to abandon the labor force. *Flannick Unemployment Compensation Case*, 168 Pa. Superior Ct. 606, 82 A. 2d 671. "The [Unemployment Compensation] Law makes no provision for employes who have jobs and will not work. It contemplates steady application to the work to which the employe is committed and, in case of necessary absences, a sincere effort to guard the job by timely notice to the employer. Failure to do so may constitute a voluntary leaving. Vernon Unemployment Compensation Case, 164 Pa. Superior Ct. 131, 63 A. 2d 383; Michalsky Unemployment Compensation Case, 163 Pa. Superior Ct. 436, 62 A. 2d 113." *Schwartz Unemployment Compensation Case*, 169 Pa. Superior Ct. 620, 622, 84 A. 2d 364.

Decision affirmed.