## Elliott Unemployment Compensation Case.

Argued September 29, 1954. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (ROSS, J., absent).

*John C. Clemmens,* with him *Body, Muth, Rhoda & Stoudt,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY HIRT, J., November 15, 1954:

The claimant in this unemployment compensation case had been in the employ of Bethlehem Cornwall Corporation, continuously since July 1950. The com-

pany rule for the protection of workmen, in effect at the time he was hired provided: "Goggles must be worn when picking, chipping, grinding, sledging, handling molten metals, or acids, or any other operation where flying particles might enter the eye. Proper colored goggles must be worn for cutting or welding." On October 3, 1953 the company modified the above Safety Rule by "requiring that all employees must wear protective safety glasses during working hours." To induce compliance with the rule, as modified, the following penalty was prescribed: "Refusal to wear glasses at any time constitutes a flagrant violation and the employee must not be permitted to continue at work or return to work until he wears his glasses." All employes had notice of the above change in the Safety Rule and of the penalty for violation of it. On October 12, 1953, claimant was directed to check out and leave the plant before the end of his shift when he refused to wear safety glasses. He had violated the rule on at least four previous occasions in the face of repeated warnings that he must comply with the regulation. The claimant however was not discharged and his contract of employment was not terminated. The action was merely a disciplinary measure, in accordance with the provisions of the Safety Rule, imposed on claimant "for insubordination in refusing to put on safety glasses when requested to do so by his superior." He remained an employe of the company and his basic status as such was not affected by the disciplinary action. On October 15, 1953, the company by letter notified claimant that his return to work depended upon his willingness not only to wear safety glasses at all times during working hours but also to abide by all other safety rules in effect at the plant. The notice stated also that if "he did not return to his position by October 26, 1953, under the conditions

stipulated he would be terminated as having left his employment voluntarily. By communications dated October 20 and October 22 the claimant advised the employer he would not return under the conditions set forth by the employer and [he] did not return. Subsequent to October 26, 1953, the claimant's name was removed from the payrolls of the company." We have quoted from the findings of the Referee based upon testimony as to which there is no dispute.

On October 23, 1953 claimant applied for unemployment compensation benefits. He subsequently lodged a grievance with his union, a local of United Steel Workers of America. The union filed a complaint in accordance with the procedure set up in its labor contract with the company, but in the midst of the proceedings withdrew the complaint and accepted the decision of the company. All of the facts to which we have referred are reflected in the findings of the Referee based upon competent testimony. Because of claimant's failure to return to his work on or before October 26, 1953, in accordance with the company's notice to him, the Referee ruled "that he left his employment voluntarily without good cause and must be disqualified under the provisions of Section 402(b) . . ." of the Unemployment Compensation Law as last amended by the Act of May 23, 1949, P. L. 1738, 43 PS §802. The Board on appeal, after hearing additional testimony, adopted the findings and conclusions of the Referee and affirmed the order denying benefits.

Section 402(b) provides: "An employe shall be ineligible for compensation for any week . . . In which his unemployment is due to voluntarily leaving work without good cause." As to the test to be applied in determining whether there is good cause for voluntarily leaving work by an employe we have said: "The vitalizing element of good cause is good faith. Sturdevant

Unemployment Compensation Case, 158 Pa. Superior Ct. 548, 45 A. 2d 898. There can be no good cause which does not rest in good faith." *Brilhart Unemploy. Compensation Case,* 159 Pa. Superior Ct. 567, 49 A. 2d 260.

Claimant attempted to justify his refusal to wear safety glasses at all times during working hours on two grounds. When he was hired in 1950 the then operative safety rule required employes to wear glasses only when performing certain types of work and he contended that he was not bound by any subsequent modification of it. The contention is without merit. Within the terms of the company-union agreement, rules affecting employes at their work were subject to change by the employer at any time. The present rule must be regarded as having union approval as is indicated by the union's withdrawal of its complaint filed with the company on claimant's grievance, based on the enforcement of the present rule as to him. Claimant's second ground is equally without merit. He testified that he could not wear glasses at all times, stating: "They gave me headaches." According to his testimony he suffered these headaches "at least fifty times" during the three years he worked for the company and that they made him "generally sick." The difficulty with this contention is that the testimony does not establish that the glasses were the cause of the headaches. Both the company doctor and a doctor of claimant's choice found that his vision is normal. And the Board adopted the finding and conclusion of the Referee "that claimant has not offered any medical statement to the effect that wearing safety glasses actually caused his headaches."

The testimony in this case amply supports the conclusion that claimant in legal effect quit his employment voluntarily and without good cause on October

26, 1953; the order denying compensation therefore is conclusive. *Sauers Unemp. Compensation Case,* 168 Pa. Superior Ct. 373, 77 A. 2d 891. The fact that he, one month later on November 26, 1953, offered to return to his former employment and agreed to comply with all company rules, has no bearing on the result. He then had the status of one unemployed who was applying for work and of course the company was not obliged to hire him.

Decision affirmed.