181 Pa. Superior Ct. 515 (1956)
Antinopoulas Unemployment Compensation Case.
Ambridge Savings and Loan Association, Appellant,
v.
Unemployment Compensation Board of Review.
Superior Court of Pennsylvania.
Argued April 12, 1956.
July 17, 1956.
*516 *517 Before RHODES, P.J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.
Ralph E. Smith, with him Rowley & Smith, for appellant.
Sydney Reuben, Special Deputy Attorney General, with him Herbert B. Cohen, Attorney General, for appellee.
OPINION BY WOODSIDE, J., July 17, 1956:
Georgia Antinopoulas, the claimant herein, was declared eligible for unemployment compensation benefits by the Bureau, the Referee and the Board of Review. Appellant, Ambridge Savings & Loan Association, the claimant's last employer, contends that she should be disqualified under the provisions of Section 402(b) of the Unemployment Compensation Law of December 5, 1936, P.L. 2897 (1937), as amended by the Act of March 30, 1955, P.L. 6, 43 P.S. § 802 (b), which provides that a claimant shall be ineligible for unemployment *518 compensation benefits during any week in which his unemployment is due to his voluntarily leaving work "without cause of a necessitous or compelling nature".
The claimant was employed by appellant as a general office clerk until June 8, 1955 when she was hospitalized for ten days. She notified her employer of her hospitalization. She also telephoned to him when she returned home from the hospital. Thereafter her employer contacted her on two different occasions.
On September 1, 1955 claimant was told by her physician that she could return to work, and a few days later she asked her employer whether any work was available. When she was advised that another person had been employed in her place, and that no work was available, she filed the claims for unemployment benefits which are now before us.
The Unemployment Compensation Law is not and never was intended to be health insurance legislation. Its benefits go only to persons able to work and available for work. It does not provide benefits for an ill employe during the period of his illness. Miller Unemployment Compensation Case, 158 Pa. Superior Ct. 570, 572, 45 A. 2d 908 (1946).
When an employe becomes ill and is unable for that reason to continue his employment it becomes his duty to give his employer timely notice of his illness and to seek a leave of absence or otherwise manifest his intention not to abandon the labor force. Flannick Unemployment Compensation Case, 168 Pa. Superior Ct. 606, 610, 82 A. 2d 671 (1951).
The burden is upon the employe to keep alive the employer-employe relationship after the expiration of a reasonable time for the temporary absence. Vernon Unemployment Compensation Case, 164 Pa. Superior Ct. 131, 135, 63 A. 2d 383 (1949). The employe is *519 bound to know that his job will not be kept open for him if he stays away from work indefinitely. Michalsky Unemployment Compensation Case, 163 Pa. Superior Ct. 436, 62 A. 2d 113 (1949).
An employe's action with reference to his return to employment after an illness may be so generally careless and desultory as to lead directly to termination. Regardless of actual intent, an employe's reckless, disregard for the continuance of his employment may give rise to an inference that he intended to terminate his employment. His attitude toward returning to work must be consistent with a general desire to work and be self-supporting. It may not evidence an obvious lack of good faith. "Good faith" as here used embraces not only mere negative virtue of freedom from fraud but also positive conduct which is consistent with a genuine desire to work and be self-supporting. Vernon Unemployment Compensation Case, supra.
Absence from work for good cause may become, through the lapse of an unreasonably long period of time, a voluntary termination of the employer-employe relationship without good cause so as to preclude a recovery under Section 402(b). Burton Unemployment Compensation Case, 180 Pa. Superior Ct. 255, 257, 119 A. 2d 868 (1956).
The question in this case is whether the claimant took the precautions to guard her job which a reasonably prudent person would take. Vernon Unemployment Compensation Case, supra, p. 135.
This is primarily a question of fact to be determined by the unemployment compensation authorities.
Section 510 of the Unemployment Compensation Law provides: "In any appeal to the Superior Court the findings of the board or referee, as the case may be, as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and in *520 such cases the jurisdiction of the court shall be confined to questions of law . . ." Unemployment Compensation Law, supra, as amended, § 510, 43 PS § 830.
"The plain legislative mandate confines our review to questions of law, and we cannot disturb findings of fact . . . Nor are we at liberty to substitute our findings for those of the board even when our reading of the testimony might have brought us to a different conclusion." Stillman Unemployment Compensation Case, 161 Pa. Superior Ct. 569, 575, 56 A. 2d 380 (1948).
Where the factual questions are not resolved this court will remand the case to the Board for further proceedings. Sauers Unemployment Compensation Case, 168 Pa. Superior Ct. 373, 77 A. 2d 891 (1951); Kelleher Unemployment Compensation Case, 175 Pa. Superior Ct. 261, 104 A. 2d 171 (1954).
In this case the claimant notified her employer that she was in the hospital. After she returned home she again telephoned him advising him she was home, and that her doctor said if she went back to work she "would be back in the hospital within six months" adding "unless I had someone to do my washing, ironing and my heavy work." (She was living with her husband and their three children)
About July 1 her employer brought her a pay check and she told him the situation was about the same  "I wasn't feeling well enough to do anything." Later her employer brought a disability check to her and she then told him she didn't know when she could go back to work, but offered to work at the "busy time of the year."
Her employer testified that she told him she could not continue working without risk to her health and that when he saw her a few days after July 1 she gave no indication that she intended to come back and that *521 he had no doubt in his mind from her conversation that her employment was permanently ended.
Another employe of the appellant was about to quit during the period of the claimant's illness and to replace this girl and the claimant, the employer hired two girls, one on June 24th and the other on July 7th. When claimant was replaced was it upon the assumption that she had quit her job and was that a reasonable assumption? Vernon Unemployment Compensation Case, supra.
Both the claimant and appellant testified that the claimant did not ask for a leave of absence. A formal request for a leave of absence should have been made, but her failure to make it does not bar her recovery if she "otherwise manifested her intention not to abandon the labor force."
About the first of September claimant's doctor told her she could return to work and she called her employer and finding no work available she filed this claim for unemployment compensation.
Ordinarily if an employe becomes ill and notifies his employer of his hospitalization, again notifies him that he was discharged from the hospital but is not yet well enough to return to work, and, within a reasonable time thereafter upon being advised by his physician that his health is sufficiently improved to return to work, he offers to return to his old job and is refused employment he is entitled to unemployment compensation.
His conduct must, however, be consistent with a genuine desire to work and be self supporting. He may not through words and conduct create in the mind of his employer the conclusion that he has withdrawn from the labor market and has no intention of returning to his former position. An employer is not required *522 to keep a position open for an ill employe indefinitely, especially if there is no clear indication of his intent to return to his former job.
Both the employer and employe are expected to act in good faith. An employer may not use the temporary illness of an employe as an excuse to promptly replace him. If he indicates his desire to return to his employment when he recovers, the employer is expected to keep open his employment for a reasonable time.
Did the claimant take the precautions to guard her job which a reasonably prudent person would take? She notified her employer of her hospitalization, of her return from the hospital, and of her inability to immediately return to her employment. She did not ask for a leave of absence. This was not necessary if she otherwise indicated a desire to return to her job. Did she so indicate?
Did she fail to return to her employment after being discharged from the hospital because she was too ill to do the work at the office or because she was required to do housework?
Did she meet the burden of keeping alive the employer-employe relationship? If acting in good faith she took the precautions to guard her job that a reasonably prudent person would take she should receive compensation, if she did not she should be denied compensation. These are questions of fact for the Board and not for us.
Much of this opinion appears more like a charge to a jury than an appellate court opinion. It was meant to so appear.
The Board wrote no opinion in this case, but merely adopted the findings and discussion of the Referee. We cannot determine from them whether or not the relevant rules of law were applied to the facts of this case.
*523 The following are the portions of the Referee's findings of fact as adopted by the Board relevant to the issues discussed herein:
"2. On June 8, 1955, claimant became hospitalized, and was so confined for ten days. During this period of hospitalization the employer was notified of claimant's illness, and that she would not be able to return to work for some time. Claimant was suffering from acute pneumonitis. On or about July 1, 1955, an official of the bank called upon the claimant at her home for the purpose of delivering her pay check; and, later, to deliver a disability check. On these occasions the employer representative was advised of claimant's inability to resume work for an indefinite period. During this prolonged absence it became necessary to replace claimant.
"3. Claimant was released by her doctor on September 1, 1955, as able to return to work. Subsequent thereto, and prior to the time of filing her application for unemployment compensation benefits claimant communicated with her superior in an effort to return to work, but was advised that there was nothing available for her."
These findings do not reconcile the contradictory viewpoints of the adverse parties. There is likewise no finding as to whether or not the claimant took the precautions which a reasonably prudent person should take to preserve the employment relationship during her absence and whether or not her conduct was consistent with a genuine desire to work. We cannot assume from the award that the Board made the necessary findings, for to infer the facts from the conclusion would be "an inversion of logical reasoning." Myers Unemployment Compensation Case, 164 Pa. Superior Ct. 150, 63 A. 2d 371 (1949).
*524 Since it is not the duty of this Court to decide whose testimony is credible and which facts are determinative we must refer the matter back to the Board to make findings and appropriate conclusions and to enter an order in conformity with such findings and conclusions. Lavely Unemployment Compensation Case, 163 Pa. Superior Ct. 66, 60 A. 2d 352 (1948).
The record is remanded to the Board for further consideration and determination consistent with this opinion.