Rogan Unemployment Compensation Case.
Erie Resistor Corporation, Appellant, *v.* Unemployment Compensation Board of Review.

Argued November 14, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Irving Olds Murphy,* with him *Gifford, Graham, MacDonald & Illig,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY WOODSIDE, J., January 21, 1958:

This is an appeal by the employer from an order of the Unemployment Compensation Board of Review granting compensation to the claimant.

The claimant had been employed by the appellant on a shift working from 3:30 o'clock in the afternoon until midnight. When she was transferred to a shift starting work at 7 o'clock in the morning, she left her employment and filed a claim for unemployment com-

pensation. The Bureau of Employment Security disapproved the claim on the ground that she "voluntarily quit her employment without compelling and necessitous reason." See section 402(b) of the Unemployment Compensation Law, 43 PS §802(b). Upon appeal by the claimant to the referee, he awarded compensation, and upon appeal by the employer to the Unemployment Compensation Board of Review, it affirmed the referee.

An unemployment compensation claimant who admittedly terminates his employment of his own accord has the burden of establishing good cause for the separation. *Kaminski Unemployment Compensation Case*, 174 Pa. Superior Ct. 242, 101 A. 2d 132 (1953); *Seroskie v. Unemployment Compensation Board*, 169 Pa. Superior Ct. 470, 82 A. 2d 558 (1951); *Mikanowicz Unemployment Compensation Case*, 178 Pa. Superior Ct. 612, 115 A. 2d 846 (1955).

Section 402 (b) of the Unemployment Compensation Law, 43 PS §802(b), as last amended and here applicable, provides, inter alia: "An employe shall be ineligible for compensation for any week . . . (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, . . ."

The board found that claimant "protested this transfer because she was ailing with morning sickness due to her pregnant condition," and concluded that she "had good cause for not accepting the transfer from the second to the first shift, and when the employer was unable to continue her either on the second or third shift, her refusal to accept the first shift was based on necessitous and compelling reason."

What was the "necessitous and compelling reason" that caused her to quit her employment? It was illness—"ailing with morning sickness." If an em-

ployee's illness is severe enough to justify a voluntary leaving of employment, that illness will also ordinarily justify a finding that she is not able to work. *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 559, 45 A. 2d 898 (1946).

Unemployment compensation is not sickness insurance. *Miller Unemployment Compensation Case,* 158 Pa. Superior Ct. 570, 45 A. 2d 908 (1946). It was not intended to compensate those who quit work because of illness. *Antinopoulas Unemployment Compensation Case,* 181 Pa. Superior Ct. 515, 124 A. 2d 513 (1956).

The claimant testified: "I could have done my work (during the first shift) but I might have had to excuse myself several times during the morning . . . I am definitely able to work." The employer expressed no objection to her "excusing (herself) several times during the morning."

Since she acknowledged that she was able to work under these circumstances and her employer was willing to have her do so, her reason for voluntarily leaving work was not compelling and necessitous. She is, therefore, ineligible for unemployment compensation under the provisions of section 402(b) of the Unemployment Compensation Law, supra, 43 PS §802(b).

Order reversed.

———

DISSENTING OPINION BY WRIGHT, J.:

For a number of years Mrs. Georgia Bemis Rogan was a faithful employe of the Erie Resistor Corporation, working on the afternoon shift. She became pregnant early in October, 1956[1]. On November 21, 1956, Mrs. Rogan was informed that she was being

———

[1] We have ascertained that the baby was born on July 6, 1957.

transferred to the morning shift. She protested the transfer because she was suffering from morning sickness due to her pregnant condition. We should certainly not be unmindful of the frequent occurrence of morning sickness in the early stages of pregnancy. In fact, Mrs. Rogan produced a certificate from her physician in which it was recommended that she be given work on the afternoon shift. She desired to continue working for several more months, and was fully capable of performing her duties on either the afternoon or the night shift. Since the employer insisted that she must work on the morning shift or take a maternity leave, Mrs. Rogan was forced to accept a leave at an earlier date than ordinarily required. Her claim is only for the intervening period, not for the entire duration of her pregnancy.

The compensation authorities found as a fact that Mrs. Rogan's temporary refusal to accept work on the morning shift was based on "a compelling and necessitous reason". This finding was fully supported by the evidence. The cases cited by the majority have no application in the present factual situation. The *Sturdevant* case dealt with the problem of a married woman leaving work to join her husband. In the *Miller* case the claimant was entirely unable to work, whereas in the case at bar Mrs. Rogan could work on either the afternoon or the night shift. In the *Antinopoulas* case we remanded the record and, by an opinion filed this day in that case, we have affirmed the award of benefits.

In unemployment compensation cases the determination of the condition of health of the employe and of the suitability of the work offered, considering the status of health, are questions of fact, findings as to which cannot be disturbed by the appellate court if they are supported by the evidence: *Rosell Unemploy-*

*ment Compensation Case,* 184 Pa. Superior Ct. 556, 135 A. 2d 769. The instant situation is the converse of that in the *Rosell* case and, by necessary implication, is controlled by our unanimous opinion in that case. Since I feel very strongly that the decision of the Board of Review should be affirmed, I am obliged to dissent.