Mettetal Unemployment Compensation Case.

Argued June 11, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*William Cornell Archbold, Sr.,* with him *George E. Kearns, Jr.,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY WOODSIDE, J., September 11, 1958:

In this unemployment compensation case the Bureau of Employment Security, the referee and the Unemployment Compensation Board of Review all concluded that the appellant had voluntarily terminated his employment without cause of necessitous and compelling nature, and was therefore ineligible for compensation by virtue of the provisions of section 402(b) of the Unemployment Compensation Law. 43 PS §802(b).

Section 402(b) provides that "an employe shall be ineligible for compensation for any week . . . (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . ."

The Board of Review found that the "Claimant [Clarence J. Mettetal], was last employed by [Pure Carbonic Co., Penn's Grove, New Jersey], as a Stationary Engineer and his job consisted of: Operating Boiler, Turbot-Generator and Accessory Pumps when plant was operating and general maintenance work when plant was down. At the time of hire, claimant

was given a physical examination which revealed that claimant had a slight heart murmur. However, claimant was given a complete cardiogram, after which he was assured that he would have no troubles in performing his work duties. Claimant, after working a few days, felt that the work was too heavy and thereby terminated his employment. Claimant submitted no medical certification that the work was too heavy for him nor that the work adversely affected his health. Before leaving, claimant did not request a transfer to other or lighter work. Claimant was not discharged nor was he laid off and continuous employment was available for him had he desired to remain employed."

The board concluded that the claimant "voluntarily chose to leave his employment . . . did not use due diligence in attempting to maintain the employer-employee relationship . . ." and, therefore, "voluntarily terminated his employment without cause of a necessitous and compelling nature . . ."

Where the decision of the board is against the claimant, the question for us is whether the board's findings of fact are consistent with each other and with its conclusion of law and its order, and whether the decision can be sustained without a capricious disregard of the competent evidence. *Tronieri Unemployment Compensation Case,* 164 Pa. Superior Ct. 435, 436, 65 A. 2d 426 (1949).

The reasonable inferences to be drawn from the testimony as well as the credibility of the witnesses and the weight of their testimony are for the board. We must examine the testimony in the light most favorable to the party in whose favor the board has found, and give that party the benefit of every inference which can be logically and reasonably drawn from it. *Ristis Unemployment Compensation Case,* 178 Pa. Superior Ct. 400, 403, 116 A. 2d 271 (1955).

The physical fitness of an employe to perform his job is primarily a question of fact for the board. *Filchock Unemployment Compensation Case,* 164 Pa. Superior Ct. 43, 63 A. 2d 355 (1949). The board concluded that the claimant voluntarily left his employment, and did not use due diligence in attempting to maintain the employer-employe relationship. This was a question for the board. *Antinopoulas Unemployment Compensation Case,* 185 Pa. Superior Ct. 76, 137 A. 2d 921 (1958) ; *Cupo Unemployment Compensation Case,* 187 Pa. Superior Ct. 285, 144 A. 2d 620.

The only cases cited by the appellant to support his contention are not applicable, because in all three of them the board had found for, and not against, the claimant. *Miller Unemployment Compensation Case,* 158 Pa. Superior Ct. 570, 45 A. 2d 908 (1946) ; *Pusey Unemployment Compensation Case,* 159 Pa. Superior Ct. 571, 49 A. 2d 259 (1946) ; *Filchock Unemployment Compensation Case,* supra, 164 Pa. Superior Ct. 43, 63 A. 2d 355 (1949).

The appellant argues that the evidence does not support the finding of the board that he "was assured [by the doctor after the cardiogram was taken] that he would have no trouble in performing his work duties". The appellant testified that the physician would not "pass" him for the job until after he took a cardiogram and that then the physician said, "You can work but you have to slow down and work in moderation," and that after he was examined by the physician he was accepted as a stationary engineer. The evidence supports a finding that the examining physcian concluded that the claimant was physically able to do the job. This in substance is what the board found.

Decision affirmed.

WATKINS, J. dissents.