Junda Unemployment Compensation Case.

Argued November 13, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*Louis Manderino,* with him *Manderino & Manderino,* for claimant, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Thomas D. McBride,* Attorney General, for Unemployment Compensation Board, appellee.

*John G. Wayman,* with him *E. A. Easton, Leonard L. Scheinholtz, Francis St. Clair O'Leary,* and *Reed, Smith, Shaw & McClay,* for employer, intervening appellee.

OPINION BY WRIGHT, J., December 9, 1958:

George A. Junda was employed by the Pittsburgh Steel Company, Monessen, Pennsylvania. His last day of work was May 17, 1957. On December 13, 1957, Junda filed an application for benefits which was denied by the Bureau of Employment Security on the ground that his unemployment was due to voluntarily leaving work without cause of a necessitous and com-

pelling nature under Section 402(b) of the Unemployment Compensation Law. Act of December 5, 1936, P. L. (1937) 2897, 43 P.S. 802(b). The Bureau's decision was reversed by the Referee, whereupon the employer appealed to the Board of Review. After a further hearing, the Board vacated the findings of fact of the Referee, substituted new findings, and concluded that claimant was properly disqualified under Section 402(b). This appeal followed.

In support of its conclusion, the Board made, inter alia, the following findings of fact:

"2. On May 15, 1957 the claimant requested a leave of absence from the Supervisor of Industrial Relations for the purpose of engaging in a political campaign on behalf of a third party.

"3. The leave of absence was denied in accordance with company policy. However, the Supervisor told the claimant he could take the week vacation he had coming and an additional two weeks to 'try to get this thing out of your system, and if you don't come back after that two weeks, we will forget about you'.

"4. The Supervisor saw the claimant on the street several times during the following week and urged the claimant to come back to work; but the claimant failed to do so.

"5. The claimant never reported back to the employer until July 24, 1957; and then only for the purpose of filing an insurance claim; not for the purpose of going back to work.

"6. Claimant never again contacted the employer until November 12 or 13, 1957 at which time he was advised that he had been dropped from the rolls as having abandoned his employment.

"7. Claimant testified as to an injury received at work on January 10, 1957 but told conflicting stories

as to what the injury was, and how it was suffered. The employer has no record whatever of any injury ever being reported".

Appellant's contentions are (1) that "the findings of fact made by the Board of Review are not based upon competent evidence and cannot be sustained by the record"; and (2) that "the only reasonable inference which can be drawn from the record is that claimant had compelling or necessitous reason for voluntarily leaving work".

Appellant complains particularly with regard to findings Nos. 2, 5, and 7. With respect to the second finding, Ernest Altmeyer, the employer's supervisor of industrial relations, testified that claimant applied for a leave of absence to participate in a political campaign. While claimant testified that he requested a sick leave, the Board credited Mr. Altmeyer. With respect to the fifth finding, the Board credited the testimony of Mr. Altmeyer that the purpose of claimant's interview on July 24, 1957, was to discuss a claim under his sickness and accident insurance. Appellant asserts that at the time of the interview he sought to pay the premium on his insurance. A reading of the record discloses that appellant's primary purpose in appearing on July 24 was to file an insurance claim, and he was informed that his insurance had lapsed. Nowhere is there any indication that he sought to return to work. With respect to the seventh finding, the record shows that appellant gave contradictory accounts of the manner in which he was allegedly injured. Particularly significant is the circumstance that, although appellant now claims that he was injured on January 10, 1957, no report of an accident was ever given to the employer, and a claim for workmen's compensation was not made until after appellant was dropped from the employer's rolls. Furthermore,

appellant filed no union grievance with regard to the employer's determination that he was a voluntary quit.

We must consider the testimony in the light most favorable to the party in whose favor the facts have been found: *Rosell Unemployment Compensation Case,* 184 Pa. Superior Ct. 556, 135 A. 2d 769; *Mollo Unemployment Compensation Case,* 186 Pa. Superior Ct. 86, 140 A. 2d 354; *Schreiber Unemployment Compensation Case,* 187 Pa. Superior Ct. 135, 144 A. 2d 448. It is the duty of the compensation authorities to develop all the relevant facts: *Davis Unemployment Compensation Case,* 187 Pa. Superior Ct. 116, 144 A. 2d 452. The credibility of the witnesses, the weight of their testimony, and the inferences to be drawn therefrom are for the Board: *Hall Unemployment Compensation Case,* 171 Pa. Superior Ct. 127, 90 A. 2d 292; *Cupo Unemployment Compensation Case,* 187 Pa. Superior Ct. 285, 144 A. 2d 620; *Mettetal Unemployment Compensation Case,* 187 Pa. Superior Ct. 291, 144 A. 2d 586. Findings which are supported by competent and substantial evidence are conclusive and binding on appeal: *Pino Unemployment Compensation Case,* 185 Pa. Superior Ct. 205, 137 A. 2d 839. Where the decision of the Board is against the party upon whom rests the burden of proof, the question before us is whether the Board's findings are consistent with each other and with its conclusions of law and order, and can be sustained without a capricious disregard of competent evidence; unless the answer is in the negative, the order must be affirmed: *Hogan Unemployment Compensation Case,* 169 Pa. Superior Ct. 554, 83 A. 2d 386.

The burden was on appellant to prove that he left his employment for necessitous and compelling reasons: *Goldstein Unemployment Compensation Case,* 181 Pa. Superior Ct. 255, 124 A. 2d 401. Assuming arguendo that the employer agreed to the initial ab-

sence, appellant was bound to know that the lapse of an unreasonably long period of time before return to work would sever the employer-employe relationship: *Vernon Unemployment Compensation Case,* 164 Pa. Superior Ct. 131, 63 A. 2d 383. The employer was not required to keep the job open while appellant remained away indefinitely: *Michalsky Unemployment Compensation Case,* 163 Pa. Superior Ct. 436, 62 A. 2d 113. It was appellant's duty to manifest an intention not to abandon the labor force: *Flannick Unemployment Compensation Case,* 168 Pa. Superior Ct. 606, 82 A. 2d 671. In this connection, it must appear that appellant's conduct met the standards of ordinary common sense and prudence: *Kaylock Unemployment Compensation Case,* 165 Pa. Superior Ct. 376, 67 A. 2d 801. A claimant who neglects to take those precautions to guard his job which a reasonably prudent person would have taken has, in effect, left his employment voluntarily: *O'Donnell Unemployment Compensation Case,* 173 Pa. Superior Ct. 263, 98 A. 2d 406.

In the case at bar, the Board was justified in finding that, by failing to report for a period of approximately five months without a valid credible excuse for his prolonged absence, this appellant voluntarily left his work without cause of a necessitous and compelling nature within the meaning of Section 402(b) of the Unemployment Compensation Law. The plain legislative mandate of the statute confines our review to questions of law, and we cannot disturb findings of fact, nor are we at liberty to substitute our judgment for that of the Board: *Stillman Unemployment Compensation Case,* 161 Pa. Superior Ct. 569, 56 A. 2d 380; *Antinopoulas Unemployment Compensation Case,* 181 Pa. Superior Ct. 515, 124 A. 2d 513.

Decision affirmed.