**STEADMAN v. ATLANTIC COAST LINE R. CO.**

**No. 5105.**

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1943.

J. Wesley Crum, of Denmark, S. C. (Thos. M. Boulware, of Barnwell, S. C., on the brief), for appellant.

Douglas McKay, of Columbia, S. C. (Douglas McKay, Jr., of Columbia, S. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment on a verdict directed for defendant in a suit against a railway company to recover damages for alleged breach of a contract of employment. Plaintiff is a telegraph operator formerly employed by defendant and entitled to seniority rights under a contract entered into between defendant and the Order of Railroad Telegraphers. Plaintiff asserted his seniority rights with respect to the position of clerk-telegrapher at Orangeburg, S. C., which became vacant in December 1938; and defendant refused to employ him in that position on the ground that he was not physically qualified to perform its duties. He has sued for the wages that he would have earned in the position beginning January 23, 1939, the date when he was notified that he would not be given the employment for which he had applied.

The question presented by the appeal is whether the evidence offered in his behalf was sufficient to take the case to the jury. We agree with the court below that it was not sufficient.

Plaintiff was employed by defendant as a telegraph operator at Denmark, S. C., on November 4, 1937, when the position in which he was working was abolished. Under the contract existing between defendant and the union of which he was a member, he had seniority rights which allowed him to displace any one of five junior employees and claim the next position becoming vacant for which he was qualified. The seniority rights would terminate under the contract if no service were rendered within a twelve months period, and to preserve these rights plaintiff worked for one day on November 15, 1937, as clerk-telegrapher at Barnwell, S. C. He then obtained a leave of absence on account of illness and went to a hospital in Atlanta, Ga., where he remained undergoing treatment until April 1, 1938. While there his left arm was amputated between hand and elbow. In the Summer of 1938, the position of telegrapher at Robbins, S. C., became vacant and he was assigned to it, but was unable to do the work involved. In December 1938, the position of clerk-telegrapher at Orangeburg became vacant and plaintiff applied for it. On January 23, 1939, the Superintendent of defendant wrote him, declining to appoint him to it on account of his physical condition and appointing another over whom he had seniority, saying: "I am assigning Mr. Wimberly to the Orangeburg Clerk Operators position, as I am afraid you are not fitted for the place. Don't want you to feel that you have been overlooked for such work as we feel you are fitted for."

Prior to applying for the Orangeburg position, plaintiff made application to the Railroad Retirement Board for an annuity, but this was declined on the ground that he was not totally and permanently disabled. Following this, plaintiff applied for examination by defendant's physicians with a view of determining whether he was able to fill a position with defendant. Nothing came of this examination, and plaintiff made no further application for positions as they became available. On May 2, 1941, he was dropped from the seniority list on the ground that he had not worked during the preceding twelve months.

The seniority provision of the contract between defendant and the union contains the proviso "that in the exercise of seniority under this article the employee is qualified to hold the position". The article as to the investigations and discipline provides that an employee considering himself unjustly treated shall have a hearing, provided written request for same is made within ten days, with provision for appeal. There is no evidence that plaintiff requested a hearing on the refusal to give him the Orangeburg position or on the dropping of his name from the seniority list.

Plaintiff testified that he was able to handle the work of the Orangeburg position, but there was evidence to the contrary; and there was no evidence that in refusing to assign him to that position defendant's superintendent was acting arbitrarily or otherwise than in good faith. There was testimony from the union officials that it was customary practice under the contract between defendant and the union for the superintendent to determine in the first instance whether an applicant was fitted to hold a position claimed by him under his seniority rights.

■ We may assume, as contended by counsel for plaintiff, that pursuit of remedies under the provisions of the contract was not a prerequisite to maintenance of suit for damages for breach of the contract (cf. Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Youmans v. Charleston & W. C. R. Co., 175 S. C. 99, 107, 178 S.E. 671); but we agree with the judge below that no breach of the contract is established by the evidence. It is true that plaintiff had seniority rights which would have entitled him to the position at Orangeburg if he had been qualified to fill that position, that he made application for the position and that defendant refused to assign him to it; but he was entitled to the position only if he was qualified to hold it. Someone had to pass upon his qualifications; and, in the absence of evidence to the contrary, this duty would devolve upon the superintendent, who had charge of employment. The evidence is that, under the custom prevailing, the superintendent passed upon qualifications in the first instance. When he decided that plaintiff was not qualified and there was nothing to show that he acted arbitrarily or in bad faith, plaintiff was not entitled to the position and there was nothing upon

which to base a contention that the contract had been breached by defendant. It certainly was not contemplated or intended by the contract that, because of seniority, plaintiff should become automatically entitled to a position whether qualified for it or not, or that, when the superintendent had acted reasonably and in good faith in deciding the matter committed to his discretion, his action might be reviewed by a court and jury merely because plaintiff took a contrary view of the matter and offered testimony in support of his view.

This is not to say that the superintendent was made the sole judge of plaintiff's fitness or that his decision was final and binding upon the parties. If he acted arbitrarily or in bad faith, this would furnish ground for action in the courts based on breach of contract. If the plaintiff considered himself unjustly treated, he could have the decision investigated and reviewed under the machinery which the contract provided, irrespective of bad faith or arbitrary action. Not having availed himself of this remedy and secured a reversal of the superintendent's decision, he could not, in the absence of bad faith or arbitrary action on the part of the superintendent, predicate breach of contract on the exercise of a discretion which the contract permitted.

There was no error and the judgment appealed from will be affirmed.

Affirmed.