Pusa Unemployment Compensation Case.
Erie Forge & Steel Corporation, Appellant, *v.*
Unemployment Compensation Board of Review.

Argued April 13, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Irving Olds Murphy,* with him *Gifford, Graham, MacDonald & Illig,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Herbert B. Cohen,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY RHODES, P. J., July 21, 1955:

This is an appeal by Erie Forge and Steel Corporation from the decision of the Unemployment Compensation Board of Review affirming the referee and the bureau in allowing claim of the claimant John E. Pusa.

The first and second findings of fact of the referee and the board are the same. They are undisputed and read as follows:

"1. The claimant was last employed by Erie Forge & Steel Corp., 14th and Cascade Streets, Erie, Pa., as a bricklayer earning $2.07 per hour. He was employed for seven years and June 23, 1954 was his last day of work.

"2. Subsequent to June 23, 1954 there was no bricklayer work available for the claimant. Therefore, in accordance with his seniority rights he was offered a transfer to the labor department at an hourly wage rate of $1.63½."

The board's third finding of fact reads as follows:

"3. The claimant refused the transfer on the grounds that the work offered was not commensurate

with either his skill as a bricklayer or his earning capacity and because he believed he could obtain other employment in his own trade. He did obtain such other employment shortly thereafter."

The transfer of claimant to the labor department of appellant was a temporary assignment. This was in accordance with claimant's seniority rights and with a provision of an agreement between appellant and the United Steelworkers of America, C. I. O. Claimant was a member of this union. He refused this transfer and left the employment of appellant on June 23, 1954. He filed his claim for benefits on June 25, 1954. Approximately two weeks later he obtained employment as a bricklayer at the wage of $2 per hour with a former employer, the K. & L. Refractories Company. This employment came to an end on July 14, 1954, and claimant subsequently filed a waiting week claim for the week ending July 21, 1954, which claim was allowed.

The suitability of the work was not involved and the board's finding to that effect is not supported by substantial evidence. Claimant's reason for refusing the transfer by his employer to another type of work and voluntarily leaving his employment was stated by him as follows: "It was too much difference in the rate of pay." The board concluded that claimant's voluntary leaving was based on good cause.

Section 402 (b) of the Unemployment Compensation Law of 1936, as amended, 43 PS §802 (b), provides that an employe is ineligible for compensation for any week "In which his unemployment is due to voluntarily leaving work without good cause . . ."

Claimant left his employment of his own motion; he was not discharged. He therefore voluntarily left his work. *Mehlbaum Unemployment Compensation Case,* 175 Pa. Superior Ct. 497, 501, 107 A. 2d 141. The question therefore presented on this appeal is whether

claimant in voluntarily leaving his work did so with good cause. We are of the opinion that the facts do not support the board's conclusion in this respect, and that therefore the decision must be reversed.

The board contends that it would defeat the purpose of the law to require claimant to remain employed at laboring work at a lower rate of pay than he was previously receiving as a bricklayer without giving him an opportunity to seek work in his usual occupation.

We have held that a claimant who is unemployed may be justified in refusing referred work at a rate of pay materially lower than the wages he last received, the reason being to afford him a reasonable opportunity to seek work at a rate of pay more commensurate with his demonstrated earning capacity. *Haug Unemployment Compensation Case,* 162 Pa. Superior Ct. 1, 56 A. 2d 396; *Misinkaitis Unemployment Compensation Case,* 169 Pa. Superior Ct. 124, 82 A. 2d 74. However, in those cases claimant was involuntarily unemployed and refused referred work. In the present case claimant was gainfully employed and voluntarily left his employment. In the labor department to which he had been transferred by his employer he would have received $65.40 for a forty-hour week. He refused this work to receive unemployment benefits of $30 a week. In *Mattey Unemployment Compensation Case,* 164 Pa. Superior Ct. 36, 42, 63 A. 2d 429, 433, in considering the purpose of the Unemployment Compensation Law, we said: "The unemployment compensation reserves established thereunder should be used for the payment of benefits to those who come within the objective of the Act. Payments must be made in accordance with its avowed purposes, and the Act must be given a realistic interpretation."

In *Mehlbaum Unemployment Compensation Case,* supra, 175 Pa. Superior Ct. 497, 503, 107 A. 2d 141,

143, 144, we also said: "We must not lose sight of the purpose of the Act, as expressed in the declaration of public policy. It was designed to benefit those persons who became unemployed through no fault of their own . . . This public policy must be considered in construing every provision of the law and in determining eligibility for compensation in every case . . ."

The circumstances of this case are similar to those in *Buletza Unemployment Compensation Case,* 174 Pa. Superior Ct. 248, 101 A. 2d 447. There claimant had been employed on a river boat as a loader or fireman at an hourly wage of $1.30 with subsistence and quarters. Subsequently claimant was reclassified as a deck hand at a wage of $1.17 per hour. He terminated his employment of his own accord. In affirming the decision of the board denying benefits we said (page 251 of 174 Pa. Superior Ct., page 448 of 101 A. 2d ): ". . . he could have continued to work temporarily while seeking other employment which would pay a higher wage. But the slight wage reduction furnished no reasonable, substantial, or necessitous reason for leaving his employment. Under the circumstances, . . . the reduction and the change of status did not constitute good cause for termination of his employment."

In the present case claimant could have continued to work temporarily with his employer while seeking other work at a higher wage. This is especially true in view of the fact claimant testified he was confident he could find such employment in a short period of time. The compensation which claimant would have received while temporarily assigned to the labor department was substantial although lower than his previous rate of pay. Claimant had a right to refuse the employment, but it does not follow that the change in the nature of the work and the reduction in wages in these circumstances placed claimant in a position

whereby he could resign with good cause and thus create a status of unemployment within the purview of the law. See *McGuire v. Unemployment Compensation Board of Review,* 169 Pa. Superior Ct. 467, 82 A. 2d 324. While claimant's purpose in leaving his employment to obtain work in his usual occupation at a higher rate of pay may be a laudable one, "a laudable motive for leaving employment and a 'good cause' within the meaning of the Act are entirely different things." *Dawkins Unemployment Compensation Case,* 358 Pa. 224, 231, 56 A. 2d 254.

In *Horning Unemployment Compensation Case,* 177 Pa. Superior Ct. 618, 621, 112 A. 2d 405, 406, we said: "Generally speaking, an employe who is out of work by his own decision is thereby removed from the ambit of the Unemployment Compensation Law. Labenski Unemployment Compensation Case, 171 Pa. Superior Ct. 325, 90 A. 2d 331. This general rule is qualified, however, to the extent that such an unemployed worker may be eligible for unemployment compensation benefits even though he voluntarily left his work, if his leaving was prompted by good cause. . . . We have said that, to constitute good cause, claimant's conduct must meet the standards of ordinary common sense and prudence."

For claimant to give up a job paying $65.40 a week to receive $30 a week unemployment benefits while looking for another job paying a higher wage does not make sense. On the record it could not be concluded that claimant was an unemployed worker and entitled to benefits within the expressed purpose of the law. There were no circumstances compelling claimant's action. He made no effort to maintain his employment status but terminated his employment and became unemployed. His new assignment was temporary and in conformity with his union contract. The wages were

substantial, the work not unsuitable, and no good cause was shown for the severance of the employer-employe relationship. It is to be borne in mind that claimant was bound by the agreement between the union and appellant, dated September 8, 1952, which required that claimant be offered any position to which he was entitled by virtue of seniority rights where there was a cut-back due to lack of work. See *Prentice Unemployment Compensation Case,* 161 Pa. Superior Ct. 630, 637, 56 A. 2d 295; *Mattey Unemployment Compensation Case,* supra, 164 Pa. Superior Ct. 36, 63 A. 2d 429; *Means Unemployment Compensation Case,* 177 Pa. Superior Ct. 410, 110 A. 2d 886.

Decision is reversed.