## Kinter Unemployment Compensation Case.

Argued November 15, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*George L. Kinter,* appellant, in propria persona.

*Sydney Reuben,* Special Deputy Attorney General, with him *Herbert B. Cohen,* Attorney General, for appellee.

OPINION BY ROSS, J., January 17, 1956:

In this unemployment compensation case, George Kinter, claimant, appeals from a decision of the Board

of Review denying him benefits under section 402 (b) of the Act, 43 P.S. sec. 802 (b).

Claimant began his employment with the Erie Forge and Steel Corporation in Erie in 1942 as a crane operator. He continued at that position until he became ill in January, 1948 and was admitted to the Warren State Hospital. A guardian was appointed for him at that time. He was discharged from the hospital and returned to Erie Forge and Steel in February 1949 as a laborer in the machine shop. In January 1950 he transferred to the carbide tool room as a grinder which work he continued until August 6, 1954. On this date, the company temporarily decreased its work force, cutting the claimant back to a position as laborer in another department with a cut in hourly rate. He failed to report for work in the new department and a conference was held by the claimant, his union representative and management. It was the claimant's belief that he should have been put back on the crane operation to which position he would ordinarily have been entitled by seniority. The union and management felt, however, that claimant was unfit to handle the crane and they invoked the provision in the labor contract which gave the company the right to refuse recognition of his seniority, even for a trial period, if "in the opinion of the company such trial endangers the life of any employee or seriously endangers equipment or production." Claimant continued then in his failure to report for work, was notified of his separation and the present proceeding was instituted.

Claimant's failure to report to the new job amounted to a voluntary quit. It was usual and customary at this plant and it was the union procedure that an employe who had a grievance of this nature would report to the new assignment and then institute the appropri-

ate grievance proceedings to determine the merit of his complaint. This, claimant failed to follow. He chose to bring the matter to issue immediately by failing to report, and he persisted in this failure even after his employer explained that it would then become necessary to replace him in the new position. His leaving was of his own accord and motion, hence voluntary. *Mehlbaum Unemployment Compensation Case,* 175 Pa. Superior Ct. 497, 501, 107 A. 2d 141. The case turns then on whether claimant had good cause to leave and he had the burden of establishing such good cause. *Wescoe Unemployment Compensation Case,* 166 Pa. Superior Ct. 355, 71 A. 2d 837. *Seroskie Unemployment Compensation Case,* 169 Pa. Superior Ct. 470, 82 A. 2d 558.

It is claimant's position that he had performed adequately the job of crane operator in the past and despite his illness and acceptance of a different position after returning from the Warren State Hospital, he was now entitled to seniority. In terms of time alone he was deserving of preference as a crane operator, but under the terms of the labor contract [1] then in force between his union and the company (and consequently a part of his contract of employment, *O'Donnell Unemployment Compensation Case,* 173 Pa. Superior Ct. 263, 98 A. 2d 406, *Pusa Unemployment Compensation Case,* 178 Pa. Superior Ct. 348, 354, 115 A. 2d 791), claimant

---

[1] The Board's fifth finding of fact is as follows: "Under the company's agreement with the union, of which claimant was a member, the company may refuse an assignment to an employe where, in the opinion of the company, such work would endanger the life of any employe or seriously endanger equipment or production. The company exercised this right and with the union's approval it was agreed that claimant should not be considered for the position of a crane operator out of consideration for the welfare and safety of the men and equipment."

faced a discretionary power vested in the company to recognize or refuse seniority where the company felt that the employe could not perform the tasks involved without jeopardizing the safety of other employes or endangering equipment or production. This discretion of course could not be arbitrarily exercised by the company and in fact in this case it was not. It was the joint conclusion of union and management that claimant was not yet completely fit to handle so exacting a job as that of crane operator, a job demanding unceasing attention not only to the operation of the crane but to the safety and welfare of the men below.

Even without the contract provision, since an employe is considered as leaving his employment with good cause if his own health or safety is jeopardized by the job assigned to him (*Filchock Unemployment Compensation Case,* 164 Pa. Superior Ct. 43, 63 A. 2d 355), it would seem to follow logically that an employe who leaves because the employer refuses to place him in a position which endangers the safety and welfare of *other employes,* leaves without good cause. Matters of this nature must of necessity be left in large measure to the discretion of the employer, and unless it is abused, the decision will ordinarily furnish the employe with no good cause for leaving. The refusal of the company was reasonable, and though personally unsatisfactory to claimant, it was naturally to be expected in the course of an employment requiring as it does a high degree of fitness and skill because of the great danger involved. The other position offered to claimant was one which he was able and qualified to perform and though it involved some cut in hourly wage, it was not a substantial one, and at most was a temporary thing. Cf. *Pusa Unemployment Compensation Case,* supra, 178 Pa. Superior Ct. 348, 115 A. 2d 791 and *Buletza Unemployment*

*Compensation Case,* 174 Pa. Superior Ct. 248, 251, 101 A. 2d 447.

As a whole, the circumstances were not such as to force claimant to abandon the employment, *Flannick Unemployment Compensation Case,* 168 Pa. Superior Ct. 606, 82 A. 2d 671, *Novel Unemployment Compensation Case,* 174 Pa. Superior Ct. 179, 181, 100 A. 2d 118; nor were they sufficient justification for his deserting the ranks of the employed to join the unemployed. *Green Unemployment Compensation Case,* 174 Pa. Superior Ct. 286, 288, 101 A. 2d 119. In short, claimant's reason for terminating his employment does not meet the test of ordinary and reasonable common sense and prudence. *Kaylock Unemployment Compensation Case,* 165 Pa. Superior Ct. 376, 67 A. 2d 801. We agree with the conclusion of the Board that the claimant did not sustain his burden of establishing that he left his employment with good cause.

Decision affirmed.