SMITH, Justice.
This is an appeal from a judgment of the Circuit Court of Covington County for $15,000 recovered by appellee, Glenn McDaniel, who was plaintiff below, against appellants, Thyer Manufacturing Corporation, National Homes Development Company of Mississippi, Inc., Frederick E. Thyer, and National Homes Corporation.
In his declaration, McDaniel claimed damages under a collective bargaining agreement between Thyer Manufacturing Corporation (referred to in this opinion as Thyer) and his collective bargaining agent, Local Union 1924 of the United Brotherhood of Carpenters and Joiners of America. He alleged that he was wrongfully laid off from his job by Thyer on July 15, 1960, in violation of seniority rights guaranteed him under the agreement, at a time when other employees of less seniority were re *448 tained. He also alleged that Thyer wrongfully failed to recall him to work at the plant. McDaniel claimed damages for loss of wages from the date that he was laid off until Thyer finally discontinued operations on or about December 31, 1962. He also sought damages for wages lost for a reasonable time after that date, upon the ground that the closing of the Thyer operation was brought about by its violation of the Mississippi statutes prohibiting unlawful trusts and combines (Title 8, Chapter 4, Mississippi Code of 1942 section 1088 et seq.).
Demurrers were interposed to the declaration, as finally amended, and were overruled by the trial court. Objections to the jurisdiction of the court and motions for dismissal of the suit were also overruled.
The answers filed by the defendants, in addition to denying the material allegations of the declaration, contained affirmative defenses which, in substance, asserted that the closing of the Thyer plant was brought about solely because of economic considerations, and that the laying off of McDaniel was a valid exercise of its rights, as reserved in the contract upon which the suit was based, which afforded the employer the exclusive right to exercise its judgment in retaining and recalling personnel in the event a reduction in the workload made it necessary to lay off some employees and retain others. It was asserted in the answers that appellee had been laid off in good faith, and had not been recalled, in accordance with the terms of the contract sued upon.
The provision relied upon by Thyer, as it appears in the contract sued upon, is as follows :
“Selection and retention of employees: The Company reserves the right to determine the source from which its employees shall be secured and to he the exclusive judge of the qualifications of all applicants for work and of the fitness of employees for retention by the Company, provided that age alone shall not be cause for the Company to refuse to retain an employee unless a future pension plan requires retirement at a certain age. The Company reserves the right to hire, suspend, or discharge its employees, provided, however, that before any employee is suspended or discharged the reasons therefor shall be disclosed to the chairman of the grievance committee of the Union. The Company further reserves the right to transfer and relieve employees from duties because of lack of work, and nothing herein expressed shall be construed to abrogate said rights of the Company and the further right of the Company to manage its plant and plan its production. None of such rights of the Company herein reserved shall be subject to arbitration in any form whatsoever.” (Emphasis added.)
Among other grounds assigned by appellants for reversal is that the trial court was in error in overruling motions made by each of the appellants, after each side had rested and closed, for a directed verdict.
A brief summary of the background facts follows.
Appellee, Glenn McDaniel, became an employee of Thyer Manufacturing Corporation in 19SS. Thyer’s business was the manufacture of prefabricated houses. From the time of his employment until he was laid off in 1960 these houses were constructed principally of plywood. Shortly before McDaniel was laid off by Thyer, it had moved into a new plant and had begun to construct the houses of aluminum.
Throughout his term of employment McDaniel had worked as a router machine operator. The use of aluminum virtually dispensed with the use of this machine.
McDaniel was laid off on July IS, 1960. The present suit was not begun until June 28, 1963.
A number of other employees of Thyer also were laid off at or about the same time. It is undisputed that immediately pri- or to the laying off of these employees *449 Thyer had been producing four or five houses each day. At the time the employees were laid off the production of the plant had been reduced to one or two houses each day. This reduction was brought about through a falling-off of orders for the houses. It is undisputed that it was necessary that Thyer produce at least three houses a day in order to break even and sustain operations. From July 1960 to the cessation of operations Thyer averaged less than one house each day. It is undisputed that the plant was losing money in substantial amounts and it was the position of Thyer that these losses were responsible for the eventual shutdown.
McDaniel contended that the shutdown resulted from a violation by Thyer and National Homes Corporation, an Indiana corporation, of the Mississippi statutes on trusts and combines (Mississippi Code of 1942 section 1088 et seq.).
There is a serious question, to say the least, as to whether there is substantial evidence, or any competent evidence, that Thy-er and National Homes Corporation competed with each other in the State of Mississippi, or entered into any unlawful agreement, or otherwise violated the Mississippi statutes. However, in view of the conclusion we have reached, it is not considered necessary to pass upon this question.
In essence, the issue presented for determination on this appeal is whether or not Thyer, as the employer, under the circumstances in evidence, acted within the right reserved to it under the contract to be the "exclusive judge of the qualifications of all applicants for work and * * * retention by the company * * * ” in laying off McDaniel.
From the record as a whole, it appears beyond question that at the time McDaniel and certain other employees were laid off there was insufficient work to afford jobs for the employees retained as well as those laid off. Thyer was confronted with the necessity of making a choice between employees, in the exercise of its reasonable judgment, as the “exclusive judge of the qualifications * * * of employees for retention. * * * ” It was necessary that some employees be laid off and that those retained should possess such skills and qualifications as would enable them to do the little work remaining in the most efficient manner.
It is true that McDaniel testified that at the time he was laid off on July IS, 1960, there were six men with less seniority who remained on the job and that one man was hired after he was laid off. It is not contended that, under Thyer’s reduced production schedule, there was sufficient work at that time for all of the employees retained as well as those laid off. The plant finally ceased operations altogether in December 1962.
In addition to its other provisions, the collective bargaining agreement, upon which McDaniel relies, contains this clause:
“It is understood between the parties hereto that this agreement shall be in force and effect only so long as the Company continues in the manufacture of prefabricated houses.”
The contract also contained a provision that—
“ * * * should a grievance arise on the part of an employee or group of employees, an earnest effort shall be made to settle the disputes immediately and in the following manner:
First, between the aggrieved employee and the foreman of the group involved,
Second, between the shop steward and the foreman of the group involved, and,
Third, between the local business agent of the Union and a representative of the Company.
provided, however, no grievance shall be eligible for handling unless at the time the second step is taken the Company is advised in writing and within seven (7) days after the happening of the event out *450 of which the grievance arose, by the shop steward, that said grievance exists and has not been settled at the first step, and provided further that all steps in the grievance procedure shall be carried through to conclusion within thirty (30) days from the time that the event out of which the grievance arose happened; provided, however, that any grievance which is not settled in thirty (30) days through no fault of the employee who has brought the grievance to the attention of the foreman within seven (7) days of its occurrence will not be considered settled because of this thirty (30) day limitation.”
In the event that such grievance or dispute shall not have been settled as above provided, “ * * * the matter then may be submitted to an arbitration committee of three for a final decision. * * * ”
McDaniel concedes that he did not pursue the remedy afforded by the contract, but says that he did mention the matter to his foreman and also said something about it to the Union president. He admits that he did nothing further and made no attempt to follow up the contract procedure.
McDaniel stated that, although he knew about this procedure, he did nothing further until the suit was filed, approximately three years afterward. However, we do not pass upon the effect of the failure of McDaniel to follow the contract procedure with reference to his grievance, as the case must be reversed upon another ground.
McDaniel contends that, notwithstanding the fact that the need for a router machine had been drastically reduced, he was qualified to do other jobs in connection with construction of the aluminum houses. His testimony respecting this aspect of his claim was as follows:
“Q. What other jobs did you do at the plant during that five year period?
A. I helped on saw, I hoped assemble doors, and I hoped just bringing in material, nailing.”
McDaniel’s suit is based upon contract. The purpose of the contract was to define and limit the duties and obligations, as well as the rights, of all of Thyer’s employees, including those of McDaniel, as well as those of Thyer, the employer.
The question for decision here is whether, under this particular contract, and under the circumstances in evidence, Thyer, in exercising its judgment as to which employees it would retain and which it would lay off, committed an actionable breach of the contract in the case of McDaniel. McDaniel and the other employees of Thyer were granted certain seniority rights under the contract, but these rights must be construed in relation to all of the other provisions of the contract. In clear language, Thyer declined to surrender, but reserved, the right to be the exclusive judge of the qualifications and fitness of its employees for retention when that question should arise. Here, a substantial curtailment in production resulted and it became necessary to select or choose between employees and to retain those who, in Thyer’s judgment, were better qualified to get the work done with maximum efficiency and economy. That this situation was contemplated by the signatories of the contract is apparent from its provisions.
The exclusive right to exercise this judgment was expressly reserved by Thyer and is not incompatible, but rather is consistent, with provisions of similar import embodied in the seniority clause of the contract upon which McDaniel relies:
“Seniority: * * * The last employee to be hired in the plant shall be the first employee laid off regardless of the department or the shift that the employee worked; provided, however, that there is an employee of higher seniority qualified, in the Company’s opinion, to do the work of the employee to be laid off. If there is no employee so qualified then the next to the last employee hired shall be laid off, and this same rule shall continue to apply. The last employee laid *451 off will be the first employee to be recalled provided said employee qualifies, in the Company’s judgment, for the job. * * * ” (Emphasis added.)
And while there may have remained some work of a character that McDaniel was capable of doing (a full time router machine operator no longer having been required for the construction of the aluminum houses) that fact alone did not render Thy-er’s decision to lay off McDaniel, rather than another employee, unreasonable, arbitrary, or in bad faith, when the employee or employees retained, although of less seniority, were better qualified for retention by reason of possessing a needed skill, or several skills which would enable them to be utilized in doing a full day’s work, although at a number of different jobs.
Thyer acted within its prerogative, as expressly reserved in the contract, in laying off McDaniel rather than another considered by it to be better qualified to get the work done under the enforced curtailment of its production schedule.
The laying off of McDaniel and the retention of others, under the circumstances in evidence, was a reasonable utilization of its labor force by Thyer in accordance with ordinary and reasonable requirements of efficiency and economy, and this did not violate McDaniel’s rights under the contract.
We have found no case directly in point, but in Steadman v. Atlantic Coast Line R. R., 138 F.2d 691 (4th Cir. 1943), cert. den. 321 U.S. 780, 64 S.Ct. 636, 88 L.Ed. 1073 (1944), a somewhat analogous case, the Court’s reasoning would appear to apply with equal cogency in the solution of the question under consideration here.
Steadman, a telegrapher, sought to recover damages from the railroad company for breach of a collective bargaining contract entered into between his union and the company. The breach of the contract assigned was that an employee with less seniority was hired as clerk-telegrapher in denial of Steadman’s right to such employment by reason of his seniority.
The seniority provision of the contract made the right subject to a condition “that in the exercise of seniority under this article, the employee is qualified to hold the position.”
On November 4, 1937, plaintiff’s job as telegraph operator was abolished. Later that month, he became ill and subsequently his left arm was amputated between the hand and the elbow. In the summer of 1938, Steadman was assigned the position of telegrapher by the Company, but was unable to do the work involved. In December 1938 he applied for the vacant position of clerk-telegrapher, but the position was awarded to an employee with less seniority. The Company’s superintendent wrote plaintiff: “I am afraid you are not fitted for the place. Don’t want you to feel you have been overlooked for such work we feel you are fitted for.”
The United States District Court directed a verdict for the defendant company and Steadman appealed to the United States Court of Appeals for the Fourth Circuit. In affirming the decision of the lower court, the Court of Appeals said:
“It is true that plaintiff had seniority rights which would have entitled him to the position at Orangeburg if he had been qualified to fill that position * * *; but he was entitled to that position only if he was qualified to hold it. Someone had to pass upon his qualifications; * * * The evidence is that, under the custom prevailing, the superintendent passed upon qualifications in the first instance. When he decided that plaintiff was not qualified and there was nothing to show that he acted arbitrarily or in bad faith, plaintiff was not entitled to the position and there was nothing upon which to base a contention that the contract had been breached by defendant. It certainly was not contemplated or intended by the contract that, because of *452 seniority, plaintiff should become automatically entitled to a position whether qualified for it or not, or that, when the superintendent had acted reasonably and in good faith in deciding the matter committed to his discretion, his action might be reviewed by a court and jury merely because plaintiff took a contrary view of the matter and offered testimony in support of his view.
“This is not to say that the superintendent was made the sole judge of plaintiff’s fitness or that his decision was final and binding upon the parties. If he acted arbitrarily or in bad faith, this would furnish ground for action in the courts based on breach of contract.” 138 F.2d at 692-693.
An employer has no obligation to prefer employees on the basis of seniority, independently of contract. McDaniel’s Union and Thyer were at liberty to contract upon any terms they might agree upon, and the provisions of that particular contract must control here. In Kinter v. Unemployment Compensation Board of Review, 180 Pa.Super. 529, 119 A.2d 639 (1956), the Court said this:
“In terms of time alone he was deserving of preference as a crane operator, but under the terms of the labor contract * * * claimant faced a discretionary power vested in the company to recognize or refuse seniority where the company felt that the employee could not perform the tasks involved without jeopardizing the safety of other employees or endangering equipment or production. This discretion of course could not be arbitrarily exercised by the company and in fact in this case it was not.” (Emphasis added) 180 Pa.Super. at 532-533, 119 A.2d at 640-641.
Sullivan v. Boeing Aircraft Co., 29 Wash.2d 397, 187 P.2d 312, 174 A.L.R. 566 (1947), involved an action by Sullivan, an employee, against Boeing, his employer, for wages lost because of Boeing’s alleged violation of his seniority rights under a labor relation agreement. Boeing had required Sullivan to change from the first to the second shift and he refused to work. Sullivan was senior to some “A” riveters on the first shift in other shops of the same plant. The Court said:
“ * * * in the determination of the meaning and application of specific words and expressions, the entire context and subject matter of the agreement may be taken into consideration.”
“ * * * we are of the opinion that the expression ‘shall have regard to seniority,’ as used in the agreement, was not intended to have the same meaning as ‘will be governed by seniority.’ We think that the term ‘shall have regard to seniority’ means simply that the company was required to take the matter of seniority into consideration, together with all the other factors presented by the particular situation, and if upon such consideration there was reasonable ground for making the transfer, and no arbitrary disregard of respondent’s seniority rights, the company would be permitted to make such change.” 29 Wash.2d at 404, 187 P.2d at 316.
The testimony shows that under the reduced production schedule, which had resulted from a falling-off in Thyer’s orders for the prefabricated aluminum houses, it would have been possible to keep McDaniel occupied only a few hours each day, and it was necessary that only such employees should be retained as were capable of performing satisfactorily in several categories of work so that they might be kept occupied full time. The evidence in the record is wholly insufficient to form the basis of a conclusion that Thyer, in the exercise of its judgment, acted in bad faith, arbitrarily or unreasonably in choosing between the employees retained and McDaniel (and others) who were laid off. The right to make this selection was expressly reserved to Thyer, as employer, in the contract which forms the basis of McDaniel’s suit. We *453 have concluded that the evidence was insufficient to go to the jury on this question, and appellants’ motions for directed verdicts should have been sustained by the trial court.
Reversed and judgment here for appellants.
GILLESPIE, P. J., and RODGERS, JONES, and BRADY, JJ., concur.