**SNELLING & SNELLING, Appellant,**

v.

**Doris NIEMEYER, Respondent.**

No. 52359.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 26, 1988.

Jonathan W. Belsky, Clayton, for appellant.

Richard R. Russell, Kirkwood, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Snelling & Snelling, appeals from a judgment entered by the Circuit Court of St. Louis County in favor of respondent, Doris Niemeyer. On appeal, appellant argues that the trial court erred in entering judgment for respondent, in that respondent did not have good cause for leaving her employment and the contract in question is not against public policy. Finding appellant's contention to be meritorious, we reverse and remand.

Appellant is a private employment agency, engaged in the business of procuring employment for applicants who seek such a service. Respondent and appellant entered into a contract, whereby respondent was obligated for the payment of fees to appellant in the event respondent accepted an offer of employment obtained through appellant's referrals. Respondent was referred by appellant to a law firm, which offered her a position at a salary of $10,-800.00 a year. Respondent accepted this offer and the law firm paid appellant $996.00; thus, respondent was not obligated to appellant at that time for any fees arising out of her acceptance of the position. Respondent voluntarily left her job with the law firm twenty-one days after beginning employment there. Respondent proceeded to assume a position with Southwestern Bell Company. Respondent's stated reason for leaving the law firm was that Southwestern Bell Company offered higher compensation and better benefits. Appellant refunded $996.00 to the law firm and requested that respondent pay $996.00, which respondent refused to do.

The contract entered into between appellant and respondent involving the position at the law firm states that if respondent "voluntarily leave[s], ... [respondent] agrees to pay the full service charge even though the employer may have agreed to pay [respondent's] obligation to [appellant]." The contract sets forth the service charge as being twelve percent of respondent's yearly salary. The parties further agreed that:

> The service charge will not exceed 25% of the gross salary actually paid to the applicant, if the applicant's employment shall terminate within the first 45 days of such employment, unless the applicant has left his work voluntarily....

This contractual provision is very similar to RSMo § 289.040(10) (1986), which provides that an employment agency cannot:

> Charge an applicant a fee exceeding twenty-five percent of the gross salary actually paid to the applicant, if the applicant's employment shall terminate within the first forty-five days of such employment, *unless the applicant has left his work voluntarily without good cause....*

RSMo § 289.040(10) (1986) (emphasis added).

Upon respondent's refusal to pay appellant, appellant brought suit in the Circuit Court of St. Louis County. The trial was held under a stipulated set of facts. The two questions of law under which the case was argued were whether respondent had good cause, within the meaning of RSMo § 289.040(10) (1986), to leave her employment with the law firm and whether the contract was void as against public policy. After an adverse judgment, respondent obtained a trial *de novo*. Following the trial *de novo*, judgment was entered in favor of respondent, and it is from this judgment that appellant appeals.

Initially, we note that there is nothing inherently inimical to the public welfare in the operation of an employment agency. *Adams v. Tanner*, 244 U.S. 590, 593, 37 S.Ct. 662, 663, 61 L.Ed. 1336 (1917). Such

a service has been held to be both useful and commendable. *Id.; People v. Redfield,* 366 Ill. 562, 10 N.E.2d 341, 343 (1937). Nonetheless, a state may regulate the maximum fees charged by an employment agency. *Olsen v. Nebraska,* 313 U.S. 236, 243, 61 S.Ct. 862, 863, 85 L.Ed. 1305 (1941). However, where a statute regulating fees is penal in nature, as is RSMo § 289.040(10) (1986),[1] the statute should be construed in favor of the employment agency. *See Faingnaert v. Moss,* 295 N.Y. 18, 64 N.E.2d 337, 338 (1945).

On appeal, appellant argues that respondent did not have good cause to leave her employment with the law firm and that the contract is not against public policy. Appellant asserts that as a matter of law the offer of better compensated employment does not constitute good cause for leaving one's employment under RSMo § 289.040(10) (1986). Our research indicates that this issue is a matter of first impression in Missouri.

As there are no cases defining good cause as it is used in RSMo § 289.040(10) (1986), we will examine how the term has been construed in cases involving an employee's right to unemployment benefits under Missouri's Employment Security statute. For, RSMo § 288.050.1(1) (1986) denies unemployment benefits to one who leaves his work "voluntarily and without good cause attributable to his work or to his employer." RSMo § 288.050.1(1) (1986). It is a question of law whether good cause has been shown in this context. *Central Missouri Paving Co. v. Labor and Industrial Relations Commission,* 575 S.W.2d 889, 892 (Mo.App., W.D.1978). And, the disqualification provision requires a strict construction. *Brown v. Labor & Industrial Relations,* 577 S.W.2d 90, 94 (Mo.App., W.D.1978). Good cause is limited to instances where "the unemployment is caused by *external* pressures so compelling that a reasonably prudent person would be justified in giving up employment." (emphasis added). *Citizens Bank*

*of Shelbyville v. Industrial Commission,* 428 S.W.2d 895, 899 (Mo.App., E.D.1968); *City of Florissant v. Labor & Industrial Relations Commission,* 613 S.W.2d 713, 714 (Mo.App., E.D.1981). In adhering to such a definition, we determined that when a worker whose hours were reduced from full-time to part-time, but who received the same rate of pay, quit his job for this reason, good cause was not shown. *Division of Employment Security v. Labor & Industrial Relations Commission,* 625 S.W.2d 882, 884–85 (Mo.App., E.D.1981). The decision in *Erie Forge And Steel Corp. v. Unemployment Compensation Board of Review,* 178 Pa.Super. 348, 115 A.2d 791 (1955), interpreted an unemployment benefits statute very similar to Missouri's. The court ruled that where an employer offered an employee a temporary transfer at reduced wages to a job outside the employee's usual occupation, and the employee refused the transfer and left in order to try to obtain work in his usual occupation at a higher rate of pay, good cause did not exist. *Id.,* 115 A.2d at 794.

Our research into the interpretation which other states have accorded the term good cause in statutes regulating employment agencies reveals the decision in *Accurate Employment Service v. Rowell,* 126 N.E.2d 81, 84 (Ohio Com.Pl.1954). In *Rowell,* the court held that an employee did not voluntarily terminate her employment, but instead quit for adequate cause, where her employer made improper advances towards her. *Id.* at 84.

In the present case, we refuse to adopt a distorted construction of good cause as it is used in RSMo § 289.040(10) (1986); the plain and ordinary meaning of the phrase precludes a determination that the legislature intended that the offer of better compensated employment would constitute good cause for respondent to leave her position at the law firm. *See Bartley v. Special School District of St. Louis County,* 649 S.W.2d 864, 867 (Mo. banc 1983).

This court holds that respondent did not have good cause for leaving her employ-

1. Section 289.070 (1986) provides that violation of § 289.040(10) is a misdemeanor.

ment and that the contract is not against public policy. We reverse and remand.

CRIST and GRIMM, JJ., concur.